**DiSABATO & BOUCKENOOGHE LLC**
Lisa R. Bouckenooghe, Esq.
4 Hilltop Road
Mendham, New Jersey 07945
Phone: 973.813.2525
Fax: 973.900.8445
lbouckenooghe@disabatolaw.com

*Attorneys for Plaintiffs*
*Alejandro Vincente Perez and Cathleen Hanenberg-Perez*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEJANDRO VINCENTE PEREZ and CATHLEEN HANENBERG PEREZ,<br><br>        Plaintiffs,<br><br>    vs.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>        Defendants. | Civil Action No.: 14-2279-CCC-JBC<br>Honorable Claire C. Cecchi, U.S.D.J.<br>Honorable James B. Clark, U.S.M.J.<br><br><br>  **SIXTH AMENDED COMPLAINT** |

Plaintiffs Alejandro Vincente Perez and Cathleen Hanenberg-Perez, husband and wife, of Franklin Lakes, New Jersey, by their undersigned attorneys, by way of Sixth Amended Complaint, state and allege as follows:

**<u>NATURE OF THE ACTION</u>**

1.     This action arises out of Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase") policy and practice of routinely and systematically engaging in unfair, deceptive, and/or misleading practices with Plaintiffs by entering into a binding Trial Plan Contract with Plaintiffs and then breaching that agreements. Chase has strung along Plaintiffs by repeatedly

1

requesting documentation already provided with the false promise that they will receive a permanent loan modification while continuing to demand and accept monthly mortgage payments, under the false promise that these payments would result in a permanent modification.

2.     The keystone of the scheme was its Trial Payment Plan Contract (the "Trial Plan Contract") that was provided to Plaintiffs during their modification process.  Although Plaintiffs fully performed their obligations under the Trial Plan Contract, Chase had no intention of ever providing a permanent modification.  Chase simply used the Trial Plan Contract as a tool to capture Plaintiffs and deprive them of any other reasonable option, other than what was offered by Chase.

3.     Plaintiffs were victimized by Chase's systematic breach of the Trial Plan Contract and abuse of the modification process.

## PARTIES

4.     Plaintiffs Alejandro Vincente Perez and Cathleen Hanenberg-Perez are residents of New Jersey and owners of the property located at 236 Mabel Ann Avenue, Franklin Lakes, New Jersey 07417, and sought a HAMP modification from Defendant Chase.

5.     Defendant J.P. Morgan Chase Bank, N.A. ("Chase") is a national banking association and wholly-owned subsidiary of J.P. Morgan Chase & Co., a Delaware corporation authorized to conduct business in the State of New Jersey.

## JURISDICTION AND VENUE

6.     The United States District Court has diversity jurisdiction pursuant 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

2

7.      Venue in this action properly lies here under 28 U.S.C. §1391 because Defendant's liability to Plaintiffs arose within the jurisdictional region of this Court.  Plaintiffs are citizens and residents of the State of New Jersey.  Defendant maintains a physical presence in this State, conduct substantial business in this State and receive substantial compensation and profits from their business activities in this State so as to subject themselves to personal jurisdiction in this State.

8.      Venue in this action properly lies here under 28 U.S.C. §1391 because Defendant's liability to Plaintiffs arose within the jurisdictional region of this Court.  Defendant does substantial business in this State, receive substantial compensation and profits from the servicing of home mortgage loans in this State, and have made material omissions and misrepresentations and breached contracts and other promises and engaged in unlawful practices in this State, so as to subject themselves to personal jurisdiction in this State.  Plaintiffs reside in this State, and Plaintiffs' property is located in this State.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in this State, and a substantial portion of the wrongdoing alleged took place in this State.

## FRAUDULENT CONCEALMENT/EQUITABLE TOLLING

10.     Upon information and belief, Defendant affirmatively concealed from Plaintiffs the status of their HAMP modification application.

11.     Defendant failed to disclose known information about the status of Plaintiffs' HAMP modification.  Specifically, Defendant failed to disclose that Plaintiffs were denied a HAMP modification.  Instead, Defendant advised Plaintiffs to continue to remit monthly payments in furtherance of a HAMP modification.

3

12.     Despite exercising reasonable diligence, Plaintiffs could not have discovered that they had in fact been denied a HAMP modification when (a) Chase failed to issue a denial letter pursuant to HAMP guidelines; and (b) Chase repeatedly advised Plaintiffs that their HAMP modification was forthcoming and that they should continue to remit monthly payments in the amount of $1,964.35 in furtherance of their HAMP modification; and (c) Chase accepted those payments for the period December 2009 through October 2014. Thus, running of the statute of limitations has been tolled with respect to any claims that Plaintiffs have brought or could have brought as a result of the unlawful and fraudulent course of conduct described here.

13.     Defendant is further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its acts of fraudulent concealment pursuant to the doctrines of equitable tolling, equitable estoppel and/or fraudulent concealment with respect to each and every cause of action and/or Count asserted herein.

## ALLEGATIONS OF FACT

14.     On or about July 19, 2009, Plaintiffs Alejandro Vincente Perez and Cathleen Hanenberg-Perez entered into a Home Affordable Modification Trial Plan Contract with Defendant Chase Home Finance L.L.C. in connection with the property located at 236 Mabel Ann Avenue, Franklin Lakes, New Jersey and secured by mortgage loan no. ending in 1399.

15.     Chase Home Finance L.L.C. is no longer in existence but was succeeded to by Defendant JPMorgan Chase Bank, N.A.

16.     The Trial Plan Contract required the Perez' to make three (3) trial payments of $1,964.50 per month for the months August 2009, September 2009 and October 2009, each of which they made.

17.     With respect to the Modification Agreement, the Trial Plan Contract provided:

4

3.   <u>The Modification</u>      I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period [] above, the Lender will determine a new payment amount.  If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect a new payment amount and waive any unpaid late charges accrued to date.  Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

18.   The Trial Plan Contract also provided as follows:

G.   I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I received a fully executed copy of the Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents *if* I fail to meet any one of the requirements under this Plan. (emphasis added).

19.   Plaintiffs complied with all conditions required for modification under the Contract, and remained qualified for a permanent modification throughout the term of the Trial Plan Contract, by, among other things, complying with the terms of Trial Plan Contract and all other applicable rules and guidelines, and the fact that all representations made in support of the modification application (and on which Chase based its decision to offer the Trial Plan Contract) remained true and accurate throughout the term of the Trial Plan Contract.

20.   Plaintiffs made each of their three (3) Trial Payments in accordance with the Trial Plan Contract.

21.   Indeed, after completing their Trial Payments, Plaintiffs were advised by Chase to continue making Trial Payments while they were awaiting a HAMP modification.

5

22.     Thereafter, in March 2010, to Plaintiffs' surprise, Chase provided Plaintiffs with an in-house Chase modification.   Plaintiffs declined that modification offer on the basis that the unpaid principal balance was inaccurate, the income figures purportedly relied upon by Chase seemed inaccurate, and the number of dependents was inaccurate.

23.     At that time (March 2010), Chase representative Antonio Gynes advised Plaintiffs that they were approved for a HAMP modification and to continue sending in their Trial Payments. He further apologized to Plaintiffs for the confusion regarding the Chase in-house modification offer, and explained it as having been generated by an internal system error.

24.     Mr. Gynes specifically verified to Plaintiffs that the monthly payment of $1,964.35 was their "new monthly payment," and advised that they should continue to send in that amount each month with the corresponding Trial Plan payment stub.

25.     In reliance on Chase's representations, Plaintiffs continued to make their Trial Payments in the amount of $1,964.35 per month per the instructions given to them.

26.     Despite Plaintiffs' compliance with the Trial Plan Contract, and despite Chase's acknowledgement thereof, Chase to date has refused to actually provide Plaintiffs with the permanent loan modification, thereby breaching the Trial Plan Contract.

27.     Indeed, Plaintiffs have made monthly Trial Payments in the amount of $1,964.35 per month for the period August 2009 through October 2014 – a total of **sixty-one (61) monthly payments** pursuant to their contract with Defendant Chase.

28.     The total amount paid pursuant to this Contract is approximately $139,599.71.

29.     Throughout this period, Chase has repeatedly asked for additional financial information for their review in connection with Plaintiffs' pending modification.  Plaintiffs have

6

submitted <u>all</u> requested and required documentation to Chase in connection with their application for a permanent HAMP modification.

30.     At no time did Plaintiffs receive a written denial letter informing them that they had been denied a HAMP modification.

31.     Due to Chase's willful breach of the Trial Plan Contract and material misrepresentations, Plaintiffs have fallen further and further behind on their mortgage, suffered damage to credit, additional damages, and other consequential damages stemming from Chase's breach.

32.     Defendant Chase has advised that there remains outstanding on Plaintiffs' loan a past due balance, comprised of unpaid principle and interest in the amount of $159,117.00 as of September 20, 2016.

33.     Of this amount, approximately $94,871.18 represents "unpaid interest," which continues to accrue.

34.     Chase had internal policies and practices (or the absence thereof) through which Chase entered into the Trial Plan Contracts with Plaintiffs and subsequently breached that Contract as part of a corporate-wide scheme to drain payments from Plaintiffs while having no intention of actually modifying the loans.

**<u>COUNT ONE</u>**
**(Violation of the Consumer Fraud Act, 56:8-1 *et seq.*)**

35.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

36.     Plaintiffs and Chase are "persons" within the meaning of § 56:8-1(d).

37.     As part of its pattern and practice, Chase engaged in deceptive acts and unconscionable commercial business practice.

7

38.     Chase engaged in the unconscionable commercial practice of leading Plaintiffs to believe that they would be offered a permanent modification of their mortgage upon successful completion of a Trial Plan Contract and by subsequently refusing to permanently modify Plaintiffs' loan notwithstanding Plaintiffs' successful performance under the Trial Plan Contract.

39.     Chase also engaged in a materially misleading corporate pattern and practice by taking steps to purposefully delay deciding on Plaintiffs' permanent loan modification until well after the Modification Effective Date had passed, and continuing to accept Trial payments after the Trial Period had ended despite the Trial Plan Contract's unequivocal language stating that Chase would, on the Modification Effective Date, grant a permanent modification if Plaintiffs satisfied all terms and conditions therein.

40.     This policy of delay and obfuscation misled Plaintiffs as to whether a permanent modification was forthcoming and deceived Plaintiffs into not pursuing other options for obtaining a more affordable mortgage, avoiding additional late fees and damage to credit, and other consequential damages.

41.     As a direct result of the unlawful and unconscionable business practices engaged in by Chase as specifically described above, Plaintiffs suffered ascertainable losses in an amount equal to all monies expended in furtherance of obtaining a permanent loan modification and the difference in value between the permanent modification to which they were entitled after fully performing under the Trial Plan Contract and the value of the loan they have now.  Alternatively, Plaintiffs have suffered an ascertainable loss in an amount equal to the difference in value between the permanent modification to which they were entitled as of the Modification Effective Date and the cost of payments that they continued to make once the Modification Effective Date had passed.

8

42.     Each and every dollar of damages suffered by Plaintiffs was proximately caused by the unconscionable business practices engaged in by Chase and specifically described above. But for the fraudulently made promise that Chase would provide a permanent modification upon completion of the Trial Plan Contract, Plaintiffs would not have incurred the fees, penalties and other late charges assessed against them by Chase.  In particular, had Chase not deliberately misrepresented, as part of a deceptive corporate pattern and practice, that Plaintiffs would receive a permanent loan modification on or before the Modification Effective Date after completion of the Trial Plan Contract, Plaintiffs would not have entered into the illusory Trial Plan Contract with Chase and would not have been subjected to *any* of the fees, penalties and other charges assessed against them while they were performing under the Contract, nor would they have been subjected to negative credit reporting, and for the period of time after completion of the Contract during which they were awaiting their permanent loan modification.

43.     The foregoing conduct engaged in by Chase constitutes an unconscionable business practice that violates NJCFA and proximately caused the ascertainable loss suffered by Plaintiffs.

## COUNT TWO
### (Fraudulent Misrepresentation)

44.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

45.     Chase made repeated material misrepresentations of presently existing facts. Specifically, during the period November 2009 through April 2010, Chase representative Antonio Gynes that Plaintiffs *were* eligible, and *were* approved for, a loan modification under HAMP.  These statements were knowingly false as Chase at that time had internally determined that Plaintiffs would not be issued a HAMP modification.

46.     Chase also made misleading and false representations during the period November 2009 through April 2010 through Antonio Gynes, and numerous other times, that Plaintiffs could and should continue to remit monthly payments to Chase in the amount of $1,964.35 in furtherance of their HAMP modification. This statement was knowingly false as as Chase at that time had internally determined that Plaintiffs would not be issued a HAMP modification.

47.     Plaintiffs reasonably relied on the advice and direction of Chase as set forth in the preceding paragraphs.  It was reasonable for Plaintiffs, as homeowners who were told by Chase that they were being assisted through the HAMP program, to rely on Chase's statements.

48.     Chase intended for Plaintiffs to so rely as is evidenced by, among other things, the fact that Chase repeatedly gave the same advice and direction to continue to remit payment and demanded that Plaintiffs follow it if they wished to receive a HAMP modification.

49.     As a direct result of Chase's fraudulent misrepresentations, Plaintiffs suffered damages, including but not limited to service charges, late fees, uncredited payments, legal fees, valuation fees, inspection fees and delinquent tax fees assessed against Plaintiff.  The precise and specific amount of the ascertainable loss suffered by Plaintiffs is $161,672.26, which continues to accrue.

50.     Each and every dollar of damages suffered by Plaintiffs was proximately caused by the fraudulent misrepresentations made by Chase and specifically described above.  But for the fraudulent advice and direction given by Chase to Plaintiffs, Plaintiffs would not have incurred the fees, penalties and other charges assessed against them by Chase, including negative credit reporting.  Similarly, had Chase not deliberately misrepresented that Plaintiffs were eligible and had been approved for a HAMP modification, Plaintiffs would not have engaged in

10

the modification process with Chase and would not have been subjected to *any* of the fees, penalties and other charges assessed against them.

## COUNT THREE
**(Breach of Contract)**

51.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

52.     On July 19, 2009, Plaintiffs accepted and executed a Trial Plan Contract offered by Chase.

53.     The Trial Plan Contract required Plaintiffs to make three (3) trial payments of $1,964.35 per month for the months August, September and October, 2009.

54.     The Trial Plan also provided that:

> The Modification     I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period [] above, the Lender will determine a new payment amount.  If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect a new payment amount and waive any unpaid late charges accrued to date.  Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Lon Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

55.     Further, payments in accordance with an executed HAMP Trial Plan Contract; the provision of extensive financial information that is not required under Plaintiffs' original mortgage; making representations in a hardship affidavit concerning Plaintiffs' personal circumstances; making payments into newly established escrow accounts; and agreeing to

11

undergo credit counseling if Chase so requested, all constitutes additional consideration supporting the Trial Plan Contract.

56.     Plaintiffs fully performed their obligations under the Trial Plan Contract. Specifically, Plaintiffs made all three monthly payments required under the Trial Plan Contract and performed all other conditions required or requested of them during the three month trial period.

57.     Pursuant to the representations in the Trial Plan Contract, Chase was obligated to provide Plaintiffs with either: (1) a permanent loan modification effective November 1, 2009, or (2), a written denial of the application for a permanent HAMP modification.  Neither occurred. Instead, Chase breached the Trial Plan Contract by stringing Plaintiffs along for months, accepting Trial payments for **five-years** beyond the initial three-month Trial period and never permanently modifying the loan or informing Plaintiffs that they had been denied a permanent HAMP loan modification.

58.     Plaintiffs made all of the required Trial Plan payments and satisfied all conditions precedent under the Trial Plan Contract.

59.     Plaintiffs gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their Trial Plan Contract with Chase.

60.     Chase breached the HAMP Trial Plan Contract by failing to offer Plaintiffs a permanent modification effective November 1, 2009, or in the alternative, by not sending a written denial to Plaintiffs explaining why they did not qualify in a timely manner.

61.     As a result of Chase's breach of the Trial Plan Contract, Plaintiffs suffered and will continue to suffer damages in an amount to be determined at trial.  Moreover, Plaintiffs

suffered and continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including payment of increased interest, longer loan payoff times, deterrence from timely seeking other remedies, damage to their credit, additional income tax liability, costs and expenses incurred to modify, and other damages for breach of contract.

<u>**COUNT FOUR**</u>
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

62.   Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

63.   Chase entered into a contract with Plaintiffs for a HAMP Trial Modification Loan on or about July 19, 2009 whereby, if Plaintiffs performed under the contract, they would be offered a permanent HAMP loan modification effective November 1, 2009 or they would be timely provided with a written denial of their modification request.

64.   Plaintiffs satisfied all conditions precedent to obtaining a permanent HAMP loan modification and performed fully under the contract.

65.   Upon Plaintiffs' performance, Chase had a good faith duty to provide Plaintiffs with a permanent HAMP loan modification effective November 1, 2009 or to provide Plaintiffs with a written explanation of the reason for the denial of their loan modification request.

66.   Chase breached its implied duty of good faith under Plaintiffs' HAMP Trial Plan Agreement by not informing Plaintiffs that they did not qualify for a permanent modification.

67.   Chase also breached its implied duty of good faith under Plaintiffs' HAMP Trial Plan by affirmatively misrepresenting that a permanent modification was forthcoming and that Plaintiffs' should continue to submit Trial Payments

68.   Chase's breach of the aforementioned implied duties caused damages to Plaintiffs in an amount to be determined at trial.  Moreover, Plaintiffs forewent other opportunities and

incurred necessary fees and expenses while waiting to hear on the status of their HAMP modification with Chase; and they accrued fees and charges in the period during which Chase should have tendered a permanent loan modification, or a decision with respect to Plaintiffs HAMP loan modification; and they suffered negative credit reporting throughout the period that they were making Trial Payments to Chase.

## <u>COUNT FIVE</u>
### (Promissory Estoppel)

69.     Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

70.     Chase entered into a contract with Plaintiffs for a HAMP Trial Modification Loan on or about July 19, 2009 whereby, if Plaintiffs performed under the contract, Chase promised to offer a permanent HAMP loan modification effective November 1, 2009, or Chase would timely provide Plaintiffs with a written denial of their modification request.

71.     Plaintiffs fully performed their obligations under the Trial Plan Contract. Specifically, Plaintiffs made all three monthly payments required under the Trial Plan Contract and performed all other conditions required or requested of them during the three-month trial period.

72.     Chase made the clear and definite promise to Plaintiffs that if they fully performed their obligations under the Trial Plan Contract they would be offered a permanent HAMP loan modification or Chase would timely provide Plaintiffs with a written denial of their modification request.

73.     Chase made the aforementioned promise with the expectation that Plaintiffs rely upon it.

14

74.     Chase reiterated the promise of a permanent HAMP loan modification through representative Antonio Gynes, who affirmatively represented that Plaintiffs had been approved for a HAMP modification, with a monthly payment amount of $1,964.35, and that they should continue to remit payment in that amount each month to Defendant Chase.

75.     Plaintiffs reasonably relied on the foregoing conduct, promises and representations by Chase that they were eligible for and were in the process of obtaining a final loan modification.

76.     In reliance on the foregoing conduct, promises, and representations by Chase, Plaintiffs have remitted monthly mortgage payments to Chase in an amount less than that due under their original mortgage loan agreement, causing Plaintiffs to fall into arrears on their obligation.

77.     Furthermore, in reliance on the foregoing conduct, promises, and representations by Chase, Plaintiffs have invested in making certain repairs to their home that they would not have otherwise made.

78.     The foregoing express conduct, promises and representations by Chase caused Plaintiffs definite and substantial detriment in that they forewent other opportunities and incurred unnecessary fees and expenses while waiting to hear on the status of their HAMP modification with Chase; and they accrued fees and charges in the period during which Chase should have tendered a permanent loan modification, or a decision with respect to Plaintiffs HAMP loan modification; and incurred substantial actual damages, damage to credit, etc.

**WHEREFORE**, Plaintiffs demands judgment against the Defendant, as follows:

A.      Awarding actual and statutory damages, including treble damages, to the Plaintiffs in amounts to be proven at trial;

B.      Awarding restitution of the consideration paid by Plaintiffs under the trial modification;

C.      Awarding a refund of all fees and penalties paid by Plaintiffs;

D.      Awarding Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and

E.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL PURSUANT TO L.CIV.R. 38.1

Plaintiffs demand a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

Pursuant to L.Civ.R. 11.2, I hereby certify, to the best of my knowledge, that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within 10 days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.


Dated: July 21, 2017                    */s/* Lisa R. Bouckenooghe
                                        Lisa R. Bouckenooghe, Esq.
                                        **DiSABATO & BOUCKENOOGHE LLC**

                                        *Attorneys for Plaintiffs*

16